# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| KACEY LYNN and ANIECIA VARGAS, individually and on behalf of all others similarly situated, | Civil Action No. 1:20-cv-00632-PB |
| Plaintiffs, | **FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |
| v. | |
| MERRIMACK COLLEGE, | |
| Defendant. | |

Plaintiffs Kacey Lynn and Aniecia Vargas ("Plaintiffs") bring this action individually and on behalf of all others similarly situated against Defendant Merrimack College ("Merrimack" or "Defendant"). Plaintiffs make the following allegations pursuant to the investigation of counsel and based upon information and belief, except as to the allegations specifically pertaining to themselves, which are based on personal knowledge.

## NATURE OF THE ACTION AND FACTS COMMON TO ALL CLAIMS

1.      This is a class action lawsuit on behalf of all people who paid tuition and fees for the Spring 2020 academic semester at Merrimack, and who, because of Defendant's response to the Novel Coronavirus Disease 2019 ("COVID-19") pandemic, lost the benefit of the education for which they paid, and/or the services for which their fees paid, without having their tuition and fees refunded to them.

2.      Merrimack is a private college with an enrollment of over 4,000 students. Merrimack offers over 100 undergraduate and graduate academic programs through its schools of science and engineering, business, education and social policy, health sciences, and liberal arts.

3.      Plaintiffs and Merrimack entered into a contractual agreement where Plaintiffs would provide payment in the form of tuition and fees and Defendant, in exchange, would provide in-person educational services, experiences, opportunities, and other related services to Ms. Vargas.  The terms of the contractual agreement where set forth in publications from Merrimack, including Merrimack's 2019-2020 Academic Catalog ("Academic Catalog"),[1] Course Search function,[2] and Merrimack's Course Registration function.

4.      When Plaintiff Vargas and Class Members sought to enter into a contractual agreement with Defendant for the provision of educational services for the Spring Semester 2020, Plaintiff Vargas and Class Members viewed the Academic Catalog and Course Search function to make specific course selections prior to registering and paying for selected courses. None of the undergraduate course descriptions within the Academic Catalog represented that they would be taught in online format.

5.      In fact, Merrimack's Course Search function specifically allows students to search for classes based on "Method" of instruction, which includes options for "Lecture Only" as opposed to "Internet."  It also allows for students to search for courses to enroll in based on "Building," which clearly states "MAIN Campus":

---

[1] http://catalog.merrimack.edu/index.php?catoid=12

[2] https://mymack.merrimack.edu/ICS/Student_Info/Course_Search.jnz?portlet=Course_Schedules&screen=Advanced+Course+Search&screenType=next



6.      Furthermore, once a student finds a class through the search function, Merrimack's Class Registration feature confirms the in-person nature of the class by providing the class' campus location, days, times, building, room number, and instructor.  An example is pictured below:

| ＋ | ACC4406-A | Advanced Accounting | 20/35 | Open | Levis, Donald B. / MWF 11:00AM-12:15PM; MAIN Campus, Crowe Hall, Classroom, 210 | 4.0 | SP 2020 | 01/16/2020 | 05/08/2020 |
|---|---|---|---|---|---|---|---|---|---|

7.      Merrimack reinforces the in-person nature of its classes by providing students with detailed schedules, again confirming that the in-person nature of the class by providing the dates, times, and on-campus locations for in-person classes, as shown in the example below:

**Spring Semester 2020 – All Programs**

| Course | Title | Credits | Grading Type | Faculty/Meeting | Dates | Room |
|---|---|---|---|---|---|---|
| BIO1106-A | Human Biology | 4.0 | LT | Banos, Juan ✍ MWF 12:30-01:45PM | 01/16/2020 - 05/08/2020 | MAIN / SULL / B1 |
| PSY2270-A | Group Dynamics | 4.0 | LT | Seitchik, Allison E. ✍ TR 08:00-09:15AM | 01/16/2020 - 05/08/2020 | MAIN / PALM / 168 |

8.      Other publications from Merrimack reference the in-person nature of the Spring Semester 2020 course offerings, including course-specific syllabi and Merrimack's Faculty Handbook.[3]  Indeed, under the "Faculty Responsibilities" section of its Faculty Handbook, Merrimack states that "[f]aculty members teaching load are designed to allow faculty to be available to meet with students outside of regularly scheduled class times" and that "Merrimack tries to keep the teaching load at a level that permits the Faculty to devote considerable time outside of class to students and to scholarly or creative work.  A minimum of three hours of office hours per week will be maintained.  Office hours will be made known to the students on

---

[3] https://www.merrimack.edu/live/files/365-faculty-handbook

the individual class syllabus and will be posted outside the faculty member's office and in his/her Department office each term that they teach."[4]

9.      On March 10, 2020, Merrimack announced on its website that Spring Break, which was originally scheduled for March 9-13, would be extended through March 22 due to concerns over COVID-19.[5]  Merrimack announced shortly thereafter on March 13 that beginning Monday, March 23, all classes would be held online through Monday, April 13.[6]

10.     Also on March 13, 2020, Merrick announced that all students are "to vacate the residential areas effective immediately" and that "[e]ffective at 5 p.m. today, all residence areas will be closed for access including Royal Crest."[7]

11.     On March 31, 2020, Merrimack announced that remote learning for the Spring 2020 semester would be extended through May 15, 2020.[8]

12.     Thus, Merrimack has not held any in-person classes since March 6, 2020.  Classes that have continued have only been offered in an online format, with no in-person instruction.

13.     As a result of the closure of Defendant's facilities, Defendant has not delivered the educational services, facilities, access and/or opportunities that Plaintiffs and the putative class contracted and paid for.  The online learning options being offered to Merrimack students are subpar in practically every aspect, from the lack of facilities, materials, and access to faculty. Students have been deprived of the opportunity for collaborative learning and in-person dialogue, feedback, and critique.  The remote learning options are in no way the equivalent of the in-person education that Plaintiffs and the putative class members contracted and paid for.

---

[4] *Id.*
[5] https://www.merrimack.edu/health-alerts/march-10-coronavirus-update/
[6] https://www.merrimack.edu/health-alerts/march-13-coronavirus-update/
[7] https://www.merrimack.edu/health-alerts/march-13-residential-student-update/
[8] https://www.merrimack.edu/health-alerts/march-31-remainder-of-spring-semester/

14.     Nonetheless, Merrimack has not refunded any tuition, housing, or mandatory fees for the Spring 2020 semester.

15.     Although Merrimack has purported to refund a portion of housing costs, that is not true.  For instance, Merrimack has been deducting students' scholarship amounts to discount the housing refunds Merrimack has distributed.  Thus, Merrimack has misapplied scholarship funds in order to provide reduced housing refunds to Plaintiffs and Class members.

16.     Plaintiff and the putative class are therefore entitled to a refund of tuition and fees for in-person educational services, facilities, access and/or opportunities that Defendant has not provided.  Even if Defendant did not have a choice in canceling in-person classes, it nevertheless has improperly retained funds for services it is not providing.  Moreover, Plaintiffs and the putative class are entitled to a pro-rata refund of housing charges due to Defendant's closure of campus and residence halls mid-way through the semester.

17.     Additionally, as mentioned above, Defendant extended Spring Break recess by an extra week.  Thus, students were deprived of a full week of instruction that Defendant had agreed to provide as specified on the Spring Semester 2020 calendar and Course Registration feature.

18.     Plaintiffs seek, for themselves and Class members, Defendant's disgorgement of the pro-rated portion of tuition, housing, and fees, proportionate to the amount of time that remained in the Spring Semester 2020 when classes moved online and campus services ceased being provided.  Plaintiffs seek a return of these amounts on behalf of themselves and the Class as defined below.

## PARTIES

19.     Plaintiff Kacey Lynn is a citizen of New Hampshire who resides in Franklin, New Hampshire.  Ms. Lynn is the parent of an undergraduate student at Merrimack.  During the

Spring Semester of 2020, Ms. Lynn's daughter was pursuing a dual degree in Criminology and Psychology. Both the Criminology and Psychology programs at Merrimack rely extensively on in-person instruction, peer collaboration, and access to Merrimack's facilities. None of these resources was available to Ms. Lynn's daughter while in-person classes were suspended. Ms. Lynn paid approximately $1,127 in tuition for the Spring 2020 semester. Ms. Lynn has not been provided a refund of any tuition monies paid, despite the fact that in-person classes have not been held since March 6, 2020. Moreover, the purported "housing refund" Ms. Lynn received was less than she should have received because the amount was offset by her daughter's scholarship. Accordingly, the scholarship was misapplied so that Merrimack could pay less in housing refunds.

20.     Plaintiff Aniecia Vargas is a citizen of New Hampshire. She was a full-time undergraduate student at Merrimack, pursuing a dual degree in Criminology and Psychology. Both the Criminology and Psychology programs at Merrimack rely extensively on in-person instruction, peer collaboration, and access to Merrimack's facilities. None of these resources were available to Ms. Vargas while in-person classes are suspended. Ms. Vargas paid approximately $18,000 in tuition, fees, meals and housing to Defendant for the Spring 2020 semester. Fees paid include a $1,285 in Comprehensive Fee to Defendant. Merrimack's website provides that the mandatory Comprehensive Fee is specifically intended to cover access to programs, facilities, activities, computing labs, and access to on-campus events, all of which Plaintiffs and Class Members could no longer partake in.[9]  Ms. Vargas has not been provided a

---

[9] *See* merrimack.edu/bursar/tuition-expenses/ ("Comprehensive fees help the college provide students with a variety of services that enhance their academic and student life experiences. Fees provide access to services such as McQuade Library, including online access; fully equipped fitness center and inside track; orientation and FYE activities; campus-wide Wi-Fi; Academic Success Center, which provides a wide range of opportunities to students wishing to enhance

refund of any tuition or Comprehensive Fees, despite the fact that in-person classes were not held since March 6, 2020.   Moreover, the purported "housing refund" Ms. Vargas received was less than she should have received because the amount was offset by her scholarship.   Accordingly, the scholarship was misapplied so that Merrimack could pay less in housing refunds.

21.     Prior to beginning the Spring Semester 2020, and prior to paying tuition and fees, Ms. Vargas consulted the Academic Catalog, Course Search function, and Course Registration function, and enrolled in courses for the Spring Semester 2020.   In consulting these materials, Ms. Vargas understood and believed that every course in which she enrolled was to be taught in-person.   Her understanding and belief were based on the course specifying an on-campus location where the course would be taught, as well as that the courses displayed a "Method" of instruction as "Lecture Only" and not "Internet," and that the function specified the classes would take place on Merrimack's "MAIN Campus."   Moreover, the Academic Catalog's Course Descriptions did not make any mention of in-person classes being taught in online format.   Thus, the in-person nature of the courses was part of the benefit of the bargain, and Ms. Vargas would not have paid as much, if any, tuition and fees for the Spring Semester 2020 at Merrimack had she known that the courses would not, in fact, be taught in-person.

22.     Defendant Merrimack College is a private college with its principal place of business at 315 Turnpike St, North Andover, MA 01845.

---

their academic performance; free tickets to Merrimack College athletic events, including hockey games; career services, which include career fairs and panels, job-search workshops, on-campus interviews and extensive one-on-one counseling to help students pursue employment and graduate-study goals. Also included are cooperative education and internship opportunities; free printing up to 1,000 black-and-white pages each academic year; discounted ticket purchases for events at the Rogers Center for the Arts; participation in intramural's and recreation activities, club sports, clubs and organizations, social and educational programs, and Greek life; Hamel Health Center, which provides medical, psychological and health-education services.").

## JURISDICTION AND VENUE

23.     The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs.

24.     This Court has personal jurisdiction over Defendant because many of the acts and transactions giving rise to this action occurred in this District, and because Defendant conducts substantial business in this District and has sufficient minimum contacts with New Hampshire. Defendant has solicited students residing in New Hampshire to attend its institution; has accepted money, including application fees, tuition, and other fees from students residing in New Hampshire, has websites accessible to students in New Hampshire, has entered into contracts with New Hampshire residents, and generally has minimum contacts in New Hampshire sufficient to satisfy the Due Process Clauses of the New Hampshire and United States Constitutions.

25.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because many of the acts and transactions giving rise to this action occurred in this District, and because Plaintiffs are residents of this District.  Specifically, the contract that is the subject of this action was formed in this District.

## FACTUAL ALLEGATIONS

### *Plaintiffs And Class Members Paid Tuition And Fees For Spring Semester 2020*

26.     Plaintiffs and Class members are individuals who paid the cost of tuition and other fees for the Spring 2020 Semester at Merrimack.

27.     Spring Semester 2020 classes at Merrimack began on or about January 16, 2020. Classes and final exams for the semester concluded on or around May 8, 2020.

28.     Plaintiffs and Class members paid the cost of tuition for the Spring Semester 2020.  They also paid other fees associated with the Spring Semester 2020.

29.     Approximate undergraduate tuition and fees at Merrimack for the Spring 2020 Semester are as follows:

- Undergraduate Tuition: $20,385
- Comprehensive Fee:  $1,285

30.     According to Merrimack's website, "[c]omprehensive fees help the college provide students with a variety of services that enhance their academic and student life experiences. Fees provide access to services such as McQuade Library, including online access; fully equipped fitness center and inside track; orientation and FYE activities; campus-wide Wi-Fi; Academic Success Center, which provides a wide range of opportunities to students wishing to enhance their academic performance; free tickets to Merrimack College athletic events, including hockey games; career services, which include career fairs and panels, job-search workshops, on-campus interviews and extensive one-on-one counseling to help students pursue employment and graduate-study goals."

31.     Approximate graduate tuition costs at Merrimack for the Spring 2020 semester are as follows:

**2019 - 2020 Master's Degree Tuition (per credit hour)**

| | |
|---|---|
| Graduate (all programs unless specified) | $915 |
| Teacher Education; Higher Education; Community Engagement; Certificate of Advanced Graduate Studies (CAGS) | $630 |
| Criminology and Criminal Justice | $795 |
| Athletic Training* | $710 |
| Interfaith Spirituality(Certificate); Spiritual Direction(Certificate); Spiritual Direction, Spirituality | $600 |

32.     Merrimack also charges its graduate students mandatory Comprehensive Student Fees based on the number of credits the student is enrolled in.

33.     The tuition and fees described in the paragraph above are provided by way of example; total damage amounts – which may include other fees that are not listed herein but that were not refunded – will be proven at trial.

***In Response To COVID-19, Merrimack Closed Campuses And Cancelled All In-Person Classes***

34.     On March 13, 2020, Merrimack announced that because of the global COVID-19 pandemic, beginning Monday, March 23 (the first day back from Spring Break) all classes would be held online through April 13, 2020.  On March 31, Merrimack ultimately extended its cancellation of in-person classes for the duration of the Spring 2020 Semester.

35.     Merrimack has not held any in-person classes since March 6, 2020.  Classes that have continued have only been offered in an online format, with no in-person instruction.  The closure of Merrimack's campuses has been extended through the end of Spring Semester 2020. Classes that have continued have only been offered in an online format, with no in-person instruction.  Even classes for students with concentrations in areas where in-person instruction is especially crucial (such as the fine arts and the sciences) have only had access to minimum online education options.

36.     As a result of the closure of Defendant's facilities, Defendant has not delivered the educational services, facilities, access and/or opportunities that Plaintiffs and the putative class contracted and paid for.  Plaintiffs and the putative class are therefore entitled to a refund of all tuition and fees for services, facilities, access and/or opportunities that Defendant has not

provided.  Even if Defendant did not have a choice in canceling in-person classes, it nevertheless has improperly retained funds for services it is not providing.

37.     Plaintiffs and members of the Class did not choose to attend an online institution of higher learning, but instead chose to attend Defendant's far more expensive in-person program.

38.     Defendant markets Merrimack's "on-campus experience" as a benefit of enrollment on Merrimack's website:

### Location, location, location.
Sun-soaked trees lining grassy quads. Winding brick paths and beautiful fall foliage. Rolling hills covered by a blanket of snow. Our 220-acre campus is pretty Instagram-worthy (all year round) — and only 20 minutes from Boston.

39.     The online learning options being offered to Merrimack students are subpar in practically every aspect and a shadow of what they once were, from the lack of facilities, materials, and access to faculty.  Students have been deprived of the opportunity for collaborative learning and in-person dialogue, feedback, and critique.

40.     The remote learning options are in no way the equivalent of the in-person education putative class members contracted and paid for.  The remote education being provided is not even remotely worth the amount charged class members for Spring Semester 2020 tuition. The tuition and fees for in-person instruction at Merrimack are higher than tuition and fees for other online institutions because such costs cover not just the academic instruction, but encompass an entirely different experience which includes but is not limited to:

- Face to face interaction with professors, mentors, and peers;

- Access to facilities such as libraries, laboratories, computer labs, and study room;

- Student governance and student unions;

- Extra-curricular activities, groups, intramural sports, etc.;

- Student art, cultures, and other activities;

- Social development and independence;

- Hands on learning and experimentation;

- Networking and mentorship opportunities.

41.     Through this lawsuit Plaintiffs seek, for themselves and Class members, Defendant's disgorgement of the pro-rated portion of tuition and fees, proportionate to the amount of time that remained in the Spring Semester 2020 when classes moved online and campus services ceased being provided.  Plaintiffs seek return of these amounts on behalf of herself and the Class as defined below.

## CLASS ALLEGATIONS

42.     Plaintiffs seek to represent a class defined as all people who paid Merrimack Spring Semester 2020 tuition and/or fees for in-person educational services that Merrimack failed to provide, and whose tuition and fees have not been refunded (the "Class").  Specifically excluded from the Class are Defendant, Defendant's officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by Defendant, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or Defendant's officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

43.     Plaintiffs also seek to represent a subclass consisting of Class members who reside in New Hampshire (the "Subclass").

44.     Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class and Subclass may be expanded or narrowed by

amendment or amended complaint.

45.     **Numerosity.**  The members of the Class and Subclass are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable.  Upon information and belief, Plaintiffs reasonably estimate that there are thousands of members in the Class and Subclass.  Although the precise number of Class members is unknown to Plaintiffs, the true number of Class members is known by Defendant and may be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

46.     **Existence and predominance of common questions of law and fact.**  Common questions of law and fact exist as to all members of the Class and Subclass and predominate over any questions affecting only individual Class members.  These common legal and factual questions include, but are not limited to, the following:

(a)     whether Defendant accepted money from Class and Subclass members in exchange for the promise to provide services;

(b)     whether Defendant has provided the services for which Class and Subclass members contracted;

(c)     whether Class and Subclass members are entitled to a refund for that portion of the tuition and fees that was contracted for services that Defendant did not provide.

(d)     whether Defendant has unlawfully converted money from Plaintiffs, the Class and Subclass; and

(e)     whether Defendant is liable to Plaintiffs, the Class, and Subclass for unjust

enrichment.

47.    **Typicality.**  Plaintiffs' claims are typical of the claims of the other members of the Class in that, among other things, all Class and Subclass members were similarly situated and were comparably injured through Defendant's wrongful conduct as set forth herein.  Further, there are no defenses available to Defendants that are unique to Plaintiffs.

48.    **Adequacy of Representation.**  Plaintiffs will fairly and adequately protect the interests of the Class and Subclass.  Plaintiffs have retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiffs intend to vigorously prosecute this action on behalf of the Class and Subclass.  Furthermore, Plaintiffs have no interests that are antagonistic to those of the Class or Subclass.

49.    **Superiority.**   A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class and Subclass members are relatively small compared to the burden and expense of individual litigation of their claims against Defendant.  It would, thus, be virtually impossible for the Class or Subclass on an individual basis, to obtain effective redress for the wrongs committed against them.  Furthermore, even if Class or Subclass members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court.  Moreover, the class action device presents no unusual management difficulties under the circumstances.

50.     In the alternative, the Class and Subclass may also be certified because:

    (a)     the prosecution of separate actions by individual Class and Subclass members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the Defendant;

    (b)     the prosecution of separate actions by individual Class and Subclass members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

    (c)     Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

## COUNT I
### Breach Of Contract
### (On Behalf Of The Class And Subclass)

51.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

52.     Plaintiffs bring this claim individually and on behalf of the members of the Class and Subclass against Defendants.

53.     Plaintiffs and Defendant entered into a contractual relationship where Plaintiffs would provide payment in the form of tuition and fees, and Defendant, in exchange, would provide in-person educational services, experiences, opportunities, and other related services. The terms of the parties' contractual relationship are set forth in publications from Merrimack,

including the 2019-2020 Academic Catalog, Course Search function, and Merrimack's Course Registration function.

54.     When Plaintiffs and Class Members sought to enter into a contractual agreement with Defendant for the provision of educational services for the Spring Semester 2020, Plaintiff Vargas and Class Members viewed the Academic Catalog, Course Search function and Course Registration function to make specific course selections prior to registering and paying tuition and fees for those selected courses.  All of these materials from Defendant constitute an offer to enter a contractual agreement.

55.     The Academic Catalog provided Plaintiffs and Class Members with information regarding the courses offered and made no mention of in-person classes being taught online.

56.     Indeed, the Course Search and Course Registration functions allowed students to search and register for classes based on "Method" and then choose between "Lecture Only" or "Internet."  It also allowed for student to choose a location for classes of "MAIN Campus."

57.     As part of the contract, and in exchange for the aforementioned consideration, Defendant promised to provide certain services, all as set forth above.  Plaintiffs, Class, and Subclass members fulfilled their end of the bargain when they paid monies due for Spring Semester 2020 tuition.  Tuition for Spring Semester 2020 was intended to cover in-person educational services from January through May 2020.  In exchange for tuition monies paid, Class and Subclass members were entitled to in-person educational services through the end of the Spring Semester.

58.     Defendant materially breached the parties' contractual agreement by failing to provide in-person education services for the entirety of the Spring Semester 2020.  The provisions of the contract breached by Defendant include, but are not limited to, the provision

setting forth the details of courses as described in the Academic Catalog, Course Search function and Course Registration function.  The Academic Catalog did not make any reference to the administration of these courses in an online format.  And the Course Search and Course Registration functions warranted that classes would be in "Lecture Only" format as opposed to "Internet."

59.     Defendant has failed to provide the contracted for services and has otherwise not performed under the contract as set forth above.  Defendant has retained monies paid by Plaintiffs and the Class for their Spring Semester 2020 tuition and fees, without providing them the benefit of their bargain.

60.     Defendant also purported to provide refunds of housing monies paid, but instead subtracted scholarship amounts from the total housing refund provided.

61.     Plaintiffs and members of the Class and Subclass have suffered damage as a direct and proximate result of Defendant's breach, including but not limited to being deprived of the education, experience, and services that they were promised and for which they have already paid.

62.     As a direct and proximate result of Defendant's breach, Plaintiffs, the Class, and Subclass are entitled to damages, to be decided by the trier of fact in this action, to include but no be limited to reimbursement of certain tuition, fees, and other expenses that were collected by Defendant for services that Defendant has failed to deliver.  Defendant should return the pro-rated portion of any Spring Semester 2020 tuition and fees for education services not provided given that Merrimack has not held in-person classes since March 6, 2020.

63.     Defendant's performance under the contract is not excused due to COVID-19. Indeed, Defendant should have refunded the pro-rated portion of any education services not

provided.  Even if performance was excused or impossible, Defendant would nevertheless be required to return the funds received for services it will not provide.

64.     Therefore, Defendant should return a pro-rata share of the tuition and fees paid by Plaintiffs and Class Members that relate to those in-person educational services that were not provided after Merrimack shut down on or around March 6, 2020.  In-person educational services were not provided for approximately 50% of the Spring Semester 2020.

## COUNT II
### Unjust Enrichment
### (On Behalf Of The Class And Subclass, In The Alternative)

65.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

66.     Plaintiffs bring this claim individually and on behalf of the members of the Class and Subclass against Defendant.

67.     Plaintiffs and members of the Class and Subclass conferred a benefit on Defendant in the form of monies paid for Spring Semester 2020 tuition and other fees in exchange for certain service and promises.  Tuition for Spring Semester 2020 was intended to cover in-person educational services from January through May 2020.  In exchange for tuition monies paid, Class members were entitled to in-person educational services through the end of the Spring Semester.

68.     Defendant voluntarily accepted and retained this benefit by accepting payment.

69.     Defendant has retained this benefit, even though Defendant has failed to provide the education, experience, and services for which the tuition and fees were collected, making Defendant's retention unjust under the circumstances.  Accordingly, Defendant should return the pro-rated portion of any Spring Semester 2020 tuition and fees for education services not

provided given that Merrimack has not held in-person classes since March 6, 2020.

70.     Defendant also purported to provide refunds of housing monies paid, but instead subtracted scholarship amounts from the total housing refund provided.

71.     It would be unjust and inequitable for Defendant to retain the benefit, and Defendant should be required to disgorge this unjust enrichment.

**COUNT III**
**Conversion**
**(On Behalf Of The Class And Subclass)**

72.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

73.     Plaintiffs bring this claim individually and on behalf of the members of the Class and Subclass against Defendant.

74.     Plaintiffs and members of the Class and Subclass have an ownership right to the in-person educational services they were supposed to be provided in exchange for their Spring Semester 2020 tuition and fee payments to Defendant.

75.     Defendant intentionally interfered with the rights of Plaintiffs, the Class, and Subclass when it moved all classes to an online format and discontinued in-person educational services for which tuition and fees were intended to pay.

76.     Defendant also purported to provide refunds of housing monies paid, but instead subtracted scholarship amounts from the total housing refund provided.

77.     Plaintiffs and members of the Class and Subclass demand the return of the pro-rated portion of any Spring Semester 2020 tuition and fees for education services not provided given that Merrimack has not held in-person classes since March 6, 2020.

78.     Defendant's retention of the fees paid by Plaintiffs and members of the Class and

Subclass without providing the educational services for which they paid, deprived Plaintiffs, Class and Subclass members of the benefits for which the tuition and fees paid.

79.     This interference with the services for which Plaintiffs and members of the Class and Subclass paid damaged Plaintiffs and Class members in that they paid tuition and fees for services that will not be provided.

80.     Plaintiffs, Class and Subclass members are entitled to the return of pro-rated portion of any Spring Semester 2020 tuition and fees for education services not provided given that Merrimack has not held in-person classes since March 6, 2020.

**COUNT IV**
**(Violation Of The New Hampshire Consumer Protection Act (NHCPA),**
**RSA § 358-A:1, *et seq.*)**

81.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

82.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Class and New Hampshire Subclass against Defendant.

83.     Defendant engaged in false, misleading, and deceptive practices in violation of the NHCPA, which Plaintiffs and other New Hampshire Subclass members relied on to their detriment.

84.     By purporting to provide refunds of housing monies paid, but instead subtracting scholarship amounts from the total housing refunds provided, Defendant has engaged in deceptive conduct in violation of the NHCPA.

85.     This conduct violates several specific provisions of RSA § 358-A:2 of the NHCPA including, but not limited to, I: Passing off goods or services as those of another.

86.     Defendant's unfair or deceptive acts and practices were likely to and did in fact

deceive reasonable consumers, including Plaintiffs.

87.    Plaintiffs and the New Hampshire Subclass sustained damages as a result of Defendant's unlawful acts and are, therefore, entitled to damages and other relief provided for under RSA § 358-A:10 and 358-A:10-a of the NHCPA in the amount of actual damages or $1,000, whichever is greater.  Because Defendant's conduct was committed knowingly and/or intentionally, the Plaintiffs and the New Hampshire Subclass are entitled to treble damages.

88.    Pursuant to NHCPA RSA §§ 358-A:10 and 358-A:10-a Plaintiffs seek an order enjoining Defendant's acts or failures to act that violate the NHCPA.  Pursuant to NHCPA RSA §§ 358-A:10 and 358-A:10-a Plaintiffs and the New Hampshire Subclass seek orders necessary to restore to them all money acquired from them by Defendants in violation of the NHCPA. They also seek orders necessary to restore to class members whose identities are known to or ascertainable by Defendant all money acquired from them by Defendant in violation of the NHCPA.  Plaintiffs and the New Hampshire Subclass also seek court costs and attorneys' fees under RSA §§ 358-A:10 and 358-A:10-a of the NHCPA.

89.    Pursuant to NHCPA RSA §§ 358-A:10 and 358-A:10-a, Plaintiffs and the New Hampshire Subclass seek all other relief which the Court deems proper.

**COUNT V**
**Money Had And Received**
**(On Behalf Of The Class And Subclass)**

90.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

91.    Plaintiffs bring this claim individually and on behalf of the members of the Class and Subclass against Defendant.

92.    Plaintiffs and members of the Class and Subclass paid monetary funds to

Defendant for tuition and fees for the Spring Semester 2020.

93.     Defendant has retained the monies paid by Plaintiffs and members of the Class and Subclass for the Spring Semester 2020 while not providing in-person educational services, activities, opportunities, resources, and facilities for which those monies were paid.

94.     Defendant is in possession of and holds money that belongs to Plaintiffs and the members of the Class and Subclass in equity and good conscience.

95.     Defendant has been unjustly enriched by its retention of the funds Plaintiffs and the members of the Class and Subclass paid Defendant for tuition and fees, and it is unconscionable for Defendant to retain funds to which it is not entitled.

96.     Defendant's unlawful retention of Plaintiffs' and Class Members' and Subclass Members' funds has damaged Plaintiffs and the members of the Class.

97.     Defendant owes Plaintiffs and members of the Class and Subclass for money had and received, including, but not limited to, the amount of Plaintiffs' and Class Members' and Subclass Members' pro-rated tuition and fees for the Spring Semester 2020.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a)     For an order certifying the Class and Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and Subclass and Plaintiffs' attorneys as Class Counsel to represent the Class and Subclass;

(b)     For an order finding in favor of Plaintiffs the Class and Subclass on all counts asserted herein;

(c)     For compensatory and enhanced compensatory damages in amounts to be determined by the Court and/or jury, including but not limited to, mandatory doubling of damages and discretionary trebling pursuant to the NHCPA;

(d)     For prejudgment interest on all amounts awarded;

(e)     For an order of restitution and all other forms of equitable monetary relief;

(f)     For injunctive relief as pleaded or as the Court may deem proper; and

(g)     For an order awarding Plaintiffs and the Class and Subclass her reasonable attorneys' fees and expenses and costs of suit.

## DEMAND FOR TRIAL BY JURY

Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

Dated: October 1, 2020                    Respectfully submitted,

**KACEY LYNN and ANIECIA VARGAS**, individually and on behalf of all others similarly situated
By their attorneys,
**BURSOR & FISHER, P.A.**

By:     _/s/ Philip L. Fraietta_

Philip L. Fraietta *(pro hac vice)*
New York Bar No. 5297825
Alec M. Leslie *(pro hac vice* app. forthcoming*)*
New York Bar No. 5520721
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: pfraietta@bursor.com
        aleslie@bursor.com

**DOUGLAS, LEONARD & GARVEY, P.C.**
Benjamin T. King
NH Bar No. 12888
14 South Street, Suite 5
Concord, NH 03301
Telphone: (603) 224-1988
Email: benjamin@nhlawoffice.com

*Attorneys for Plaintiffs*