**EXHIBIT 1**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

NICHOLAS BERGERON, BARBARA
MYCEK, and NICK QUATTROCIOCCHI, individually
and on behalf of others similarly situated,

                             Plaintiffs,                  DECISION AND ORDER

vs.

                                           20-CV-6283 (CJS)

ROCHESTER INSTITUTE OF TECHNOLOGY,

                             Defendant.

_____

Plaintiffs Nicholas Bergeron, Barbara Mycek, and Nick Quattrociocchi filed this putative class action against Defendant Rochester Institute of Technology ("RIT"). Plaintiffs allege that RIT's retention of a significant proportion of the tuition and fees it collected for the spring semester of 2020, despite ceasing in-person instruction and closing its on campus facilities, amounted to either: breach of contract with its students (Counts I and III), unjust enrichment (Counts II and IV), conversion of student funds (Count V), or a violation of § 349 and § 350 of New York's General Business Law (Counts VI and VII) prohibiting deceptive business practices and false advertising. Am. Compl., Sept. 3, 2020, ECF No. 14.

The matter is presently before the Court on RIT's motion to dismiss for failure to state a claim. Mot. to Dismiss, Oct. 5, 2020, ECF No. 19. For the reasons stated below, with respect to Mycek, RIT's motion to dismiss [ECF No. 19] is granted in its entirety. With respect to Bergeron and Quattrociocchi, RIT's motion to dismiss is granted as to Counts V, VI, and VII, and denied as to Counts I through IV. RIT is directed to answer Counts I through IV of Plaintiffs' complaint within thirty days of the date of this order.

BACKGROUND

The following background has been drawn from Plaintiffs' amended complaint, as well as "documents incorporated into the complaint by reference and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). The factual allegations contained in the complaint have been accepted as true, and all reasonable inferences drawn in Plaintiffs' favor. *See Menaker v. Hofstra Univ.*, 935 F.3d 20, 26 (2d Cir. 2019).

RIT is an institution of higher learning located in Henrietta, New York, with an estimated enrollment of more than 16,000 students. Am. Compl. at ¶ 6. It offers "both in-person, hands-on programs, and fully online distance learning programs, which it markets and prices as separate and distinct products." Am. Compl. at ¶ 21. Students enrolled in the online degree program are not allowed to enroll in on-campus classes, and the tuition rate for the online program is significantly less than the on-campus program. Am. Compl. at ¶ 22, 24.

RIT markets the in-person and online programs separately through its website and other publications. Am. Compl. at ¶ 23. With respect to the in-person program, RIT promotes such benefits as "face-to-face interaction with professors, mentors, and peers," "hands-on learning and experimentation," "networking and mentorship opportunities," and "experiential learning." Am. Compl. at ¶ 25–26. RIT promises to provide "undergraduates the opportunity to work directly with faculty members in their labs to investigate, explore, and . . . learn hands-on skills that become the foundation of scientific research." Am. Compl. at ¶ 71.

2

RIT's publications regarding the in-person program are also "full of references to the on-campus experience, including numerous references to student activities; campus amenities; class size; campus diversity; campus location, and the like." Am. Compl. at ¶ 67. On a webpage entitled "RIT Life," RIT advertises more than 300 clubs and organizations, over 13,000 on-campus and off-campus events, 27 organizations offering on-campus performances, 21 locations for on-campus dining, 31 diverse inter/national social fraternities and sororities, and over "2,600+ international students from 102 countries that complement the campus climate . . . ." Am. Compl. at ¶ 75.

Lastly, RIT promises students of the in-person program that they "have access to some of the finest laboratories, technology and computing facilities available on any university campus." Am. Compl. at ¶ 80–81 (quoting an admissions letter from Director of Undergraduate Admissions Marian N. Nicoletti). The Undergraduate Student Handbook for the Kate Gleason College of Engineering ("Undergraduate Bulletin") states that RIT "offers a post office, laundry rooms, computer labs, game rooms, and fitness facilities." Am Compl. at ¶ 96. It further states that "[RIT] wants you to succeed and offers an abundance of services geared toward that goal. They range from math and writing skills centers to personal counseling." Am. Compl. at ¶ 87. It also encourages students to "become part of the campus community" because doing so is "just as important as going to class, writing papers, and taking exams." Am. Compl. at ¶ 88.

Bergeron, a resident and citizen of Massachusetts, was enrolled as a student of the in-person program at RIT during the Spring 2020 term. Am. Compl. at ¶ 10. Quattrociocchi, a resident and citizen of New York, was also a student of the in-person

3

program at RIT during the Spring 2020 term. Compl., ¶ 36, Case No. 20-cv-6558 (EAW), Jul. 30, 2020, ECF No. 1. Mycek, a resident and citizen of Pennsylvania, is a parent[1] of a student who was enrolled in the in-person program at RIT during the Spring 2020 term. Am. Compl. at ¶ 11.

As a precondition for enrollment, Plaintiffs (and all similarly situated students) were required to pay substantial tuition. Am. Compl. at ¶ 18. In addition to tuition, students were also required to pay fees such as the "Student Activity Fee" and the "Student Health Services Fee." Am. Compl. at ¶ 12, 30. RIT's website states that the Student Activity Fee "supports programs, events, and services that enhance the quality of student life at RIT[,]" and the Student Health Services Fee "covers office visits and many of the basic services students may need." Am. Compl. at ¶ 31, 32.

The Spring 2020 term began on or about January 13, 2020, and was scheduled to conclude in early May. Am. Compl. at ¶ 34, 35. "Each day for the weeks and months leading up to March 15, 2020, students attended physical classrooms to receive in-person instruction, and [RIT] provided such in-person instruction." Am. Compl. at ¶ 107. Students had full access, during that period, to the full on-campus experience. Am. Compl. at ¶ 109–110. Then, on March 15, 2020, RIT announced that it was moving all of its classes online for the remainder of the Spring 2020 term, and students "were required to move out of on-campus housing no later than April 5, 2020" for the remainder of the

---

[1] The amended complaint alleges that Mycek is also a student. However, Plaintiffs' counsel clarified during oral argument that this was a typographical error, and that Mycek is actually a parent of an undergraduate student.

term. Am. Compl. at ¶ 37. RIT did not offer any refunds for tuition or student fees.[2] Am. Compl. at ¶ 40, 42.

On August 4, 2020, the Plaintiffs Bergeron and Mycek stipulated to a consolidation of their separate actions against RIT, and the consolidated complaint was filed on September 3, 2020 on behalf of themselves and two putative classes of plaintiffs: the "Tuition Class," and the "Fees Class." Am. Compl. at ¶ 45. The so-called Tuition Class consists of "[a]ll people who paid tuition for or on behalf of students enrolled in classes at [RIT] for the Spring 2020 semester but were denied live, in-person instruction and forced to use online distance learning platforms for the latter portion of that semester." *Id.* The so-called Fees Class consists of "[a]ll people who paid fees for or on behalf of students enrolled in classes at the Institute for the Spring 2020 semester." *Id.* The complaint alleges seven causes of action: (I) breach of contract for the Tuition Class; (II) unjust enrichment for the Tuition Class; (III) breach of contract for the Fees Class; (IV) unjust enrichment for the Fees Class; (V) conversion for both putative classes; (VI and VII) violation of New York General Business Law § 349 and § 350 prohibiting deceitful business practices and false advertising for both putative classes.

On October 5, 2020, RIT filed the motion to dismiss for failure to state a claim that is presently before the Court. A motion hearing was held via video conference on December 3, 2020. Min. Entry, Dec. 3, 2020, ECF No. 39. At the motion hearing, Plaintiffs' counsel represented to the Court that Quattrociocchi had agreed to consolidate his case with Bergeron and Mycek. On December 7, 2020, the Court signed the Order of

---

[2] By contrast, it appears that RIT did offer a prorated refund for housing costs. *See* Pla. Mem. of Law, 5 n.8, Nov. 5, 2020, ECF No. 32.

Consolidation, which stipulated, *inter alia*, that "RIT's arguments in support of dismissal and Plaintiffs' arguments in opposition thereto shall apply equally to Plaintiff Quattrociocchi." Stip. and Order, 2, Dec. 7, 2020, ECF No. 41.

## MYCEK'S STANDING

In its motion to dismiss, RIT argues that Mycek lacks standing[3] to pursue any claims against RIT. RIT argues that it is "axiomatic" that parents of adult students "lack standing to assert claims against universities concerning their adult children's education." Def.'s Mem. of Law, 6, Oct. 5, 2020, ECF No. 22. Consequently, RIT states that "the mere act of paying her son's tuition did not render Mycek a party to any underlying contract with RIT." *Id.* In response, Plaintiffs argue that RIT is wrong, and point out that courts in New York "have allowed tuition-paying parents to sue education institutions for 'reimbursement of tuition payments made by [a parent] on behalf of his son.'" Resp. at 5 (quoting *Uddin v. New York Univ.*, 6 N.Y.S.3d 900, 901 (N.Y. App. Div. 2014)).

The Supreme Court has established that the "irreducible constitutional minimum" of Article III standing consists of the three elements that "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547, *as revised* (May 24, 2016) (citing, *inter alia*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992)). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561.

---

[3] RIT originally argued that Bergeron also lacked standing, but later withdrew that claim. *See* Def.'s Reply, 4 n.3, Nov. 19, 2020, ECF No. 37. There is no challenge to Quattrociocchi's standing.

As the Supreme Court has further explained, "[s]tanding doctrine embraces several judicially self-imposed limits on the exercise of federal jurisdiction, such as the general prohibition on a litigant's raising another person's legal rights . . . ." *Allen v. Wright*, 468 U.S. 737, 751 (1984) (emphasis added), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014)). Indeed, under Federal Rule of Civil Procedure 17, "[a]n action must be prosecuted in the name of the real party in interest . . . . [except a] minor or incompetent . . . may sue by a next friend or by a guardian ad litem." Fed.R.Civ.P. 17(a)(1), (c)(2).

In the present case, Mycek does not allege that her child is a minor, hence she cannot sue on his behalf. *See, e.g., Capellupo v. Webster Cent. Sch. Dist.*, No. 13-CV-6481, 2014 WL 6974631, *3 (W.D.N.Y. Dec. 9, 2014) ("such rights as parents to prosecute an action on their child's behalf clearly cease when the child becomes an adult.") (citations and internal quotation marks omitted). Neither does Mycek allege that she entered directly into a contract with RIT, or that she is an intended third-party beneficiary. *See, e.g., Dormitory Auth. v. Samson Constr. Co.*, 94 N.E.3d 456, 459 (N.Y. 2018) (applying settled New York law that, absent evidence of an intent to benefit the third party, the third party has no right to enforce particular contracts). Instead, Mycek alleges only that she paid the tuition and fees so that her child could enroll as an undergraduate student.

The Court finds that Mycek's allegations are insufficient to meet her burden to show injury-in-fact. Consequently, Mycek is dismissed from the action for lack of standing.[4]

---

[4] The court notes that other jurisdictions have likewise found that a parent lacks Article III standing to bring an action against an institution of higher learning on behalf of their adult children. *See, e.g.,*

RIT'S MOTION TO DISMISS

As indicated above, Plaintiffs allege seven causes of action against Defendant RIT: breach of contract regarding services promised for both tuition and fees, unjust enrichment regarding services promised for both tuition and fees, conversion regarding monies paid for tuition and fees, and violations of New York General Business Law § 349 and § 350 regarding monies paid for tuition and fees. RIT has moved to dismiss Plaintiffs' complaint on the grounds that they have failed to state a claim. It is undisputed that New York substantive law applies.

Legal Standard

"[A] motion to dismiss for failure to state a claim tests only the sufficiency of a complaint." *Green v. Maraio*, 722 F.2d 1013, 1015 (2d Cir. 1983). To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*,

---

*Salerno v. Fla. S. Coll.*, No. 8:20-CV-1494-30SPF, 2020 WL 5583522, at *4 (M.D. Fla. Sept. 16, 2020) ("It is also of note that the lack of injury to Salerno is clear regardless of whether Salerno provided financial support to her daughter. That arrangement was between mother and daughter.") *See also Lindner v. Occidental Coll.*, No. CV 20-8481-JFW(RAOX), 2020 WL 7350212, at *6 (C.D. Cal. Dec. 11, 2020) (". . . Plaintiffs allege that the injury at issue is Occidental's failure 'to provide in-person courses and access to campus benefits.' However, [the student], not [the parent], was the intended beneficiary of any promises that Occidental allegedly made and [the student], not [the parent], suffered any alleged injury that resulted from the transition to remote instruction. Plaintiffs have failed to allege any separate and distinct injury suffered by [the parent] . . . .") (citations omitted).

8

550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

Moreover, an action should also be dismissed "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief . . . ." *Twombly*, 550 U.S. at 558. Nevertheless, "[f]act-specific question[s] cannot be resolved on the pleadings." *Comfort v. Ricola USA, Inc.*, No. 19-CV-6089 CJS, 2019 WL 6050301, at *2 (W.D.N.Y. Nov. 15, 2019) (quoting *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012) (second alteration in original)). If presented with "two plausible inferences that may be drawn from factual allegations," a court "may not properly dismiss a complaint that states a plausible version of the events merely because the court finds a different version more plausible." *Id.* "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable . . . ." *Twombly*, 550 U.S. at 556 (citation omitted).

<u>Breach of Contract</u>

It is well-settled under New York law that there is an implied contract between a student and the college or university he attends. *Rolph v. Hobart & William Smith Colleges*, 271 F. Supp.3d 386, 405 (W.D.N.Y. 2017) (quoting *Routh v. Univ. of Rochester*, 981 F.Supp.2d 184, 207 (W.D.N.Y. 2013)). The Second Circuit summarized the nature of that contract as follows:

> Under New York law, an implied contract is formed when a university accepts a student for enrollment: if the student complies with the terms prescribed by the university and completes the required courses, the university must award him a degree. The terms of the implied contract are

> contained in the university's bulletins, circulars and regulations made available to the student. Implicit in the contract is the requirement that the institution act in good faith in its dealing with its students. At the same time, the student must fulfill his end of the bargain by satisfying the university's academic requirements and complying with its procedures.

*Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 93 (2d Cir. 2011) (citations and internal quotation marks omitted). The initial interpretation of a university's catalogue, "is a matter of law for the Court." *Deen v. New School University*, No. 05 Civ. 7174, 2007 WL 1032295, at *2 (S.D.N.Y. Mar. 27, 2007) (citing *Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's, London*, 136 F.3d 82, 86 (2d Cir. 1998)).

To establish a breach of contract claim under New York law, a plaintiff must show: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of the contract by the defendant, and (4) damages." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004). Nevertheless, "[t]he application of contract principles to the student-university relationship does not provide judicial recourse for every disgruntled student." *Gally v. Columbia Univ.*, 22 F. Supp.2d 199, 207 (S.D.N.Y.1998). In the context of the student-university implied contract, "a student must identify 'specifically designated and discrete promises.'" *Nungesser v. Columbia Univ.*, 169 F. Supp.3d 353, 370 (S.D.N.Y. 2016) (quoting *Ward v. New York Univ.*, No. 99-cv-8733, 2000 WL 1448641, at *4 (S.D.N.Y. Sept. 28, 2000)). "'General policy statements' and 'broad and unspecified procedures and guidelines' will not suffice." *Id. See also Doe v. Rensselaer Polytechnic Inst.*, No. 120CV01359BKSCFH, 2020 WL 6544607, at *6–7 (N.D.N.Y. Nov. 6, 2020).

In the present case, Plaintiffs allege that they and the other members of the so-called Tuition and Fees classes, respectively, paid the tuition and fees in exchange for RIT's enrolling them as students, admitting them to campus, and granting them the full rights and privileges of on-campus, in-person instruction. Am. Compl. at ¶ 59. Plaintiffs further allege that RIT enrolls students in two separate and distinct products: a premium-priced on-campus program paid by those members of the putative Tuition and Fees classes, and a lower-priced online distance learning program. Am. Compl. at ¶ 64. Plaintiffs claim that RIT breached its contract with them when it moved the premium on-campus program to online distance learning in mid-March 2020, causing them damage "amounting to the difference in the fair market value of the [premium on campus] services and access for which they contracted, and the [online distance learning] services and access which they actually received." Am. Compl. at ¶ 119.

In its motion to dismiss the contract claims, RIT presents three principle arguments. First, RIT argues that Plaintiffs' breach of contract claims are barred by RIT's Student Financial Responsibility Agreement ("SFRA") and Tuition Refund policies. Def.'s Mem. of Law at 10. Second, RIT argues that Plaintiffs fail to identify any specific and discrete promise made by RIT to provide exclusively in-person, on-campus instruction. Def.'s Mem. of Law at 13. Finally, RIT argues that Plaintiffs' contract claims fail for lack of cognizable damages. Def.'s Mem. of Law at 15.

*Student Financial Responsibility Agreement & Tuition Refund Policies*

RIT maintains that Plaintiffs fail to state a claim for breach of contract because the contract between RIT and each individual student on campus is governed by the

Student Financial Responsibility Agreement ("SFRA"), which also incorporates by reference RIT's Tuition Refund policies, and does not specifically obligate RIT to provide any particular mode of instruction. RIT also claims that its Undergraduate Bulletin contains tuition policies and a disclaimer that bar Plaintiffs' breach of contract claims.

Before addressing the language of the SFRA, the Court reiterates that, when deciding a Rule 12(b)(6) motion, it may not rely on matters outside of the complaint. Fed.R.Civ.P. 12(d). Of course, "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). Nevertheless, "with respect to documents that are deemed 'integral' to the complaint, 'it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document' . . . ." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006) (citation omitted).

RIT states that the Court can consider the SFRA because Plaintiffs incorporated both the SFRA and the Tuition Refund policy into their complaint by reference[5] when they allege both that they "entered into contracts with [RIT] which

---

[5] *Cf. Lindner v. Occidental Coll.*, No. CV 20-8481-JFW(RAOX), 2020 WL 7350212 (C.D. Cal. Dec. 11, 2020); *Chong v. Ne. Univ.*, No. CV 20-10844-RGS, 2020 WL 5847626, at *2–3 (D. Mass. Oct. 1, 2020). RIT cites the foregoing cases in support of its motion to dismiss. However, in both of these cases, the agreements were explicitly referenced and relied upon by the plaintiffs in their complaint. *See Lindner*, 2020 WL 7350212 at *1 (stating "[p]laintiffs allege that they entered into a contract with Occidental and that "[t]he terms of the contractual agreement were set forth in publications from Occidental, including Occidental's" 2019-2020 Course Catalog . . . . [in which] Occidental expressly reserved the right, in the Tuition and Fees section, 'to change fees, modify its services, or change its program should economic conditions or national emergency make it necessary to do so.'"); *Chong*, 2020 WL 5847626 at *2–3 (stating "plaintiffs allege that they 'had an agreement' with Northeastern 'in the form of the' [Financial Responsibility Agreement] . . . . [which] ties the payment of tuition to registration for courses, not to the receipt of any particular method of course instruction.")

12

provided that Plaintiffs and other members of the Tuition Class would pay tuition . . . .," and that the "rights and privileges of student status that comprise the contractual terms are set forth by [RIT] through its website, academic catalogs, student handbooks, [etc.] . . . ." Am. Compl. at ¶ 59, 60. However, after careful review of the amended complaint, the Court finds that it cannot consider either of those documents, submitted by RIT, as incorporated into the complaint, since each bears a date subsequent to the commencement of this lawsuit. *See* Granberg (Ex. B) (dated October 2, 2020); Granberg (Ex. C) (dated Sept. 30, 2020, and including the refund schedule for the Fall 2021 term). Further, other than RIT's bare assertion that "[e]very RIT student must agree to abide by the terms of RIT's SFRA," there is indication that Bergeron or Quattrociocchio actually signed it. The Court declines to dismiss the breach of contract claim at this stage on the basis of language in a document submitted by the movant that is not incorporated into the complaint.

On the other hand, the Court may consider the RIT Undergraduate Bulletin, which Plaintiffs expressly reference in their complaint, and which contains part of the Tuition Refund policy. *See* Am. Compl. at ¶ 91; Granberg Decl. (Ex. A), 353–355, ECF No. 21-1. The Undergraduate Bulletin also contains a disclaimer, which RIT believes to be dispositive of the breach of contract claims, that "RIT reserves the right to alter any of its courses at any time." Granberg Decl. (Ex. A) at 370.

With respect to RIT's argument regarding the Tuition Policy in the Undergraduate Bulletin, the Court finds that those policies do not bear on the matter at issue. The refund policies as articulated in the bulletin relate to those circumstances in which a student

13

seeks to withdraw from class before completing the term.[6] That is, the policies govern those circumstances in which the student seeks early termination of the contract. In the present case, however, Plaintiffs made no such effort to terminate the contract. Rather, Plaintiffs fully-performed their end of the bargain – payment of tuition and fees – and seek to hold RIT to what they allege was RIT's end of the bargain – in-person, on-campus instruction.

Finally, with respect to the so-called disclaimer included in the Undergraduate Bulletin, the Court notes that it is articulated on page 370 of the University Bulletin, in text that is neither bolded nor offset from the rest of the paragraph in a multi-paragraph sub-section of the bulletin entitled "Course Registration." The paragraph reads as follows:

> To be officially registered at RIT, a student must be academically eligible, have been properly enrolled in a course, and have made the appropriate financial commitment. Typically, students start selecting courses six to eight weeks before the academic term begins and can register online. The registration period ends on the seventh calendar day (excluding Sundays and holidays) of the full fall, spring and summer terms. These first seven days (excluding Sundays and holidays) of the term are typically known as the Add/Drop period. Specific dates and procedures can be found in the academic calendar. RIT reserves the right to alter any of its courses at any time.

Granberg (Ex. A) at 370. RIT argues that this clause expressly permitted its change in the mode of instruction from in-person to online during the Spring 2020 term. Def.'s Mem. of Law at 15.

---

[6] In the Undergraduate Bulletin, the Tuition Refund policy states that a student is entitled to a full refund upon withdrawal only in the event of active military service, academic suspensions, and specified circumstances for part-time students. Granberg Decl. (Ex. A) at 354. The policy states that a student may receive a partial refund only for illness, withdrawal at RIT's request, transfer by employer, or withdrawal by the student for reasons approved by the student's academic advisor. *Id.*

The Court is not persuaded at this stage by RIT's claim that the so-called disclaimer is dispositive of Plaintiffs' breach of contract claims. Plaintiffs allege a number promises made by RIT with respect to the benefits of enrollment in the more expensive in-person, on-campus program, including: the opportunity to work directly with faculty members in their labs (Am. Compl. at ¶ 71), multi-faceted experiential learning (Am. Compl. at ¶ 70, 73), vibrant campus life (Am. Compl. at ¶ 75), "access to the finest laboratories, technology, and computing facilities available on any campus" (Am. Compl. at ¶ 81), and "a strong and robust network of support on campus to help you succeed" (Am. Compl. at ¶ 97). These allegations clearly extend beyond coursework to the entirety of the educational experience. Read in the light most favorable to Plaintiffs, as it must be at this stage of the proceedings, the scope of the so-called disclaimer – if disclaimer it is – is not broad enough to extinguish Plaintiffs' claims.

*Specific Promises*

RIT also argues that Plaintiffs have failed to sufficiently specify the contractual promises they are seeking to enforce. The Court disagrees. As the Court indicated in the previous paragraph, Plaintiffs identify a multitude of promises made by RIT regarding the benefits of its in-person, on-campus program, including opportunities to work directly with faculty in their labs, vibrant and diverse campus life, access to superior technology, and robust on-campus support. With respect to the student fees, Plaintiffs point to such statements on RIT's website as the Student Activity Fee "supports programs, events, and services that enhance the quality of student life at RIT," or that the Student Health Services Fee "covers office visits and many of the basic services students may need." Am.

15

Compl. at ¶ 143. The Court finds these promises to be sufficiently specific to survive a Rule 12(b)(6) motion to dismiss.

*Damages*

Lastly, RIT argues that Plaintiffs' breach of contract claims fail "because the alleged damages are impermissibly speculative and Plaintiffs have not pled, nor can they establish, that RIT caused their alleged damages." Def. Mem. of Law at 15. There are obviously two parts to this argument. First, RIT claims that Plaintiffs' alleged damages would require the Court to speculate about the difference between the subjective value of distance learning and the subjective value of on-campus, in-person instruction. *Id.* Second, RIT argues that by identifying Covid-19 as the cause of RIT's shift from in-person instruction to online learning, Plaintiffs fail to demonstrate that RIT caused their injury and consequently any resulting damages. Def.'s Mem. of Law at 17.

The Court disagrees with both parts of RIT's argument. In the present case, it is clear that Plaintiffs are attempting to recover "market damages." "General damages are sometimes called 'market' damages because, when the promised performance is the delivery of goods, such damages are measured by the difference between the contract price and the market value of the goods at the time of the breach." *Schonfeld v. Hilliard*, 218 F.3d 164, 175–76 (2d Cir. 2000) (internal quotation omitted). Here, the amended complaint states that "Plaintiffs and other members of the Tuition Class have suffered damage as a direct and proximate result of Defendant's breach amounting to the difference in the fair market value of the services and access for which they contracted,

and the services and access which they actually received."[7] Am. Compl. at ¶ 119. The Court finds this formulation sufficiently specific.

RIT's claim regarding the lack of causation is similarly without merit. Plaintiffs are not arguing, as RIT suggests, that Covid-19 caused the breach of contract. Rather, Plaintiffs argue that RIT itself caused the breach of contract when, after Plaintiffs had paid valuable consideration in full performance of their part of the bargain, RIT accepted such consideration from Plaintiffs, but "provided a materially different product, which deprived Plaintiffs . . . of the benefit of the bargain for which they had already paid." Am. Compl. at ¶ 116. Hence, the Court finds Plaintiffs sufficiently pled RIT as the cause of their injury.

<u>Unjust Enrichment</u>

In the alternative to their breach of contract claims, Plaintiffs also allege that RIT was unjustly enriched when it closed its campus in March 2020 and moved its classes online. "The theory of unjust enrichment lies as a quasi-contract claim and contemplates an obligation imposed by equity to prevent injustice, in the absence of an actual

---

[7] In addition, at the motion hearing, counsel for Plaintiffs reiterated that Plaintiffs were not seeking a subjective evaluation of in-person versus online instruction. Counsel explained:

> [W]e'll put this up at the appropriate time which is clearly not in a Rule 12(b)(6) motion. But we're just going to have experts who are going to be able to identify the price, what I'll call premium, to an in-person education versus an online education and that's easy to do . . . because there's a market for it.

> There are . . . literally hundreds of universities, if not thousands, across this country. Some offer classes exclusively online. Some offer hybrid programs. Some offer both like RIT. And in every single case, the online program is substantially cheaper . . . . It's because the market, the market for educational services demands a premium for in-person learning . . . .

Tr. 29:3–16.

agreement between the parties." *Georgia Malone & Co. v. Rieder*, 973 N.E.2d 743, 746 (N.Y. 2012) (quoting *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 907 N.E.2d 268 (N.Y. 2009) (internal quotation marks omitted)). To adequately plead such a claim under New York law, "the plaintiff must allege that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." *Cohen v. BMW Investments L.P.*, 668 F. App'x 373, 374 (2d Cir. 2016) (quoting *Georgia Malone & Co., Inc.* 973 N.E.2d at 746 (internal quotation marks omitted). Unjust enrichment "is available only in unusual situations when . . . circumstances create an equitable obligation running from the defendant to the plaintiff." *Cohen*, 668 F. App'x at 374 (quoting *Corsello v. Verizon New York, Inc,* 967 N.E.2d 1177 (2012)).

Here, Plaintiffs allege that they "and other members of the Tuition Class paid substantial tuition for live, in-person instruction in physical classrooms on a physical campus with all the attendant benefits." Am. Compl. at ¶ 124. Additionally, "Plaintiffs and other members of the Fees Class paid substantial student fees for on-campus services, access, benefits and/or programs and did not receive the full benefit of the bargain." Am. Compl. at ¶ 156. Nevertheless, RIT has retained both the full tuition and fees that they paid even though RIT "has failed to provide the services, access, benefits and/or programs for which the [tuition and] fees were collected, making [RIT]'s retention unjust under the circumstances." Am. Compl. at ¶ 159.

RIT argues that Plaintiffs' unjust enrichment claims should be dismissed for two reasons. First, RIT points out that it is well settled under New York law that a party

cannot recover on a claim for unjust enrichment where a contract governs the subject matter of the dispute. Def.'s Mem. of Law at 18 (quoting *Pappas v. Tzolis*, 20 N.Y.3d 228, 234 (N.Y. 2012)). Because the parties agree that a contract governs the relationship between RIT and its students, RIT states, the Plaintiffs are precluded from claiming unjust enrichment. *Id.* Second, RIT also argues that Plaintiffs' claim for unjust enrichment fails as a matter of law because Plaintiffs had no reasonable expectation of receiving a refund under RIT's published Refund Policy. *Id.*

New York law does not permit recovery on a quasi-contract claim such as unjust enrichment if the parties have a valid, enforceable contract that governs the same subject matter as the quasi-contract claim. *See Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005) (citing *Clark–Fitzpatrick, Inc. v. Long Island Rail Road Co.*, 516 N.E.2d 190 (1987)). However, a plaintiff may seek damages on alternative – and "mutually exclusive" – theories of breach of contract and unjust enrichment where "there is a dispute over the existence, scope, or enforceability of the putative contract." *Reilly v. Natwest Markets Grp. Inc.*, 181 F.3d 253, 263 (2d Cir. 1999). *See also Air Atlanta Aero Eng'g Ltd. v. SP Aircraft Owner I, LLC*, 637 F. Supp.2d 185, 195 (S.D.N.Y. 2009).

The Court declines to dismiss Plaintiffs' unjust enrichment claims at this juncture, as they have adequately pled the elements of unjust enrichment and – as noted above in the breach of contract discussion – there is a dispute over the existence, scope, or enforceability of the alleged contract in this case. Further, for the reasons stated above, the Court declines to find Plaintiffs had no reasonable expectation of a refund based on

RIT's refund policy. Plaintiffs allege that their performance conferred a financial benefit on RIT to which it was not entitled.

<u>Conversion</u>

Plaintiffs' fifth cause of action is for conversion, based on their allegations that they paid their tuition and fees, and that RIT has retained those monies and continues to possess them despite its failure to provide the services promised. Am. Compl. at ¶ 168–176. RIT argues that Plaintiffs' conversion claim is barred by the economic loss rule, and that Plaintiff fails to establish the elements of conversion. Def. Mem. of Law at 20.

According to New York law, "[c]onversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 403–04 (2d Cir. 2006), *certified question answered*, 864 N.E.2d 1272 (2007) (quoting *Vigilant Ins. Co. of Am. v. Hous. Auth.*, 660 N.E.2d 1121 (1995)). This includes a "denial or violation of the plaintiff's dominion, rights, or possession" over her property. *Id.* (quoting *Sporn v. MCA Records, Inc.*, 448 N.E.2d 1324, 1326 (1983)). It also requires that the defendant exclude the owner from exercising her rights over the goods. *Id.* (citing *New York v. Seventh Regiment Fund, Inc.*, 774 N.E.2d 702, 710 (2002)).

"An action for conversion of money is insufficient as a matter of law unless it is alleged that the money converted was in specific tangible funds of which claimant was the owner and entitled to immediate possession." *Ehrlich v. Howe*, 848 F. Supp. 482, 492 (S.D.N.Y. 1994) (collecting cases). If the allegedly converted money is "incapable of being described or identified in the same manner as a specific chattel," such as when a customer

of a bank deposits funds into an account at the bank, it is "not the proper subject of a conversion action." *High View Fund, L.P. v. Hall*, 27 F. Supp.2d 420, 429 (S.D.N.Y.1998). "This is so because a depositor loses (and the bank gains) title to money deposited in a general account at the moment those funds are deposited." *Citadel Mgmt., Inc. v. Telesis Trust, Inc.*, 123 F. Supp.2d 133, 148 (S.D.N.Y. 2000).

In this case, as RIT argues, Plaintiffs have failed to establish the elements of conversion. In particular, Plaintiffs have not alleged "a specific identifiable fund and an obligation to return or otherwise treat in a particular manner the specific fund in question." *Alzheimer's Disease Res. Ctr., Inc. v. Alzheimer's Disease & Related Disorders Ass'n, Inc.*, 981 F. Supp.2d 153, 163–64 (E.D.N.Y. 2013) (quoting *Mfrs. Hanover Trust Co. v. Chem. Bank*, 559 N.Y.S.2d 704, 712 (N.Y. App. Div. 1990)). Rather, Plaintiffs voluntarily paid tuition and fees to RIT in exchange for the full rights and privileges of student status. Am. Compl. at ¶ 59. Upon voluntary payment of those monies, title legitimately passed to RIT. *Citadel Mgmt., Inc.*, 123 F. Supp.2d at 148. Consequently, Plaintiffs' conversion claim must be dismissed as a matter of law.

New York General Business Law § 349 and § 350

Plaintiffs' sixth and seventh causes of action allege violations of New York's General Business Law § 349 and § 350 prohibiting deceptive business practices and false advertising. Plaintiffs maintain that RIT's marketing publications created the reasonable expectations of enrolled students that they would receive an in-person, on-campus education for the entire Spring 2020 term. Am. Compl. at ¶ 186. Thus, RIT's actions depriving the students of an in-person, on-campus education between March and

May of 2020 "constitute[d] unfair business practices since the actions were deceptive and injurious to Plaintiffs and" other members of the putative classes. Am. Comp. at ¶ 188. The Court disagrees.

New York General Business Law sections 349 and 350 state in pertinent parts as follows:

> (a) Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful . . . .
>
> False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful.

N.Y. Gen. Bus. Law §§ 349(a) and 350. Deceptive acts are defined as those that are "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Horowitz v. Stryker Corp.*, 613 F. Supp.2d 271, 287 (E.D.N.Y. 2009) (citation omitted).

"In order to state a claim under either . . . § 349 (which prohibits deceptive business practices) or § 350 (which prohibits false advertising), plaintiff must allege that the defendant engaged in: (1) consumer-oriented conduct; (2) that was materially misleading; and that (3) plaintiff suffered actual injury as a result of the allegedly deceptive conduct." *Mancuso v. RFA Brands, LLC*, 454 F. Supp. 3d 197, 204 (W.D.N.Y. 2020) (citing *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 490 (2d Cir. 2014)). A plaintiff need not establish defendant's intent to defraud or mislead. *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 745 (N.Y. 1995).

Determining whether a practice is deceptive or materially misleading is an objective exercise, and requires a showing that the "reasonable consumer would have been misled by the defendant's conduct." *M & T Mortg. Corp. v. White*, 736 F. Supp.2d

538, 570 (E.D.N.Y. 2010). In the present case, the Court finds that no reasonable prospective student could consider him- or herself "deceived" or "misled" where the school's normal course of on-campus instruction was altered mid-semester by an unforeseen global pandemic that prompted the Governor of New York to issue an unprecedented executive order prohibiting on-campus, in-person instruction. Whatever the merit of Plaintiffs' breach of contract or unjust enrichment claims, there is nothing in the complaint that plausibly alleges that RIT's publications would lead a reasonable prospective student to believe that the institution would so risk student safety and defy the Governor's orders.

CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that Plaintiff Mycek is dismissed from this action for lack of standing, and the Clerk of Court is directed to remove Plaintiff Mycek's name from the case caption; and it is further

ORDERED that Defendant RIT's motion to dismiss the amended complaint [ECF No. 19] is granted in part, and denied in part. Plaintiffs' claims that RIT converted Plaintiffs' funds and violated General Business Law § 349 and § 350 (Counts V, VI, and VII) are dismissed. Plaintiffs' claims that RIT was in breach of contract or was unjustly enriched with respect to tuition and fee payments (Counts I, II, III, IV), may go forward; and it is further

ORDERED that Defendant RIT must file an answer to Plaintiffs' remaining claims within thirty days of the date of this order.

Dated:          December 18, 2020
                Rochester, New York

                                                    ENTER:


                                                    /s/ Charles J. Siragusa
                                                    CHARLES J. SIRAGUSA
                                                    United States District Judge

24