**EXHIBIT 3**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
# PEORIA DIVISION

| | | |
|---|---|---|
| JANE DOE, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 20-1264 |
| BRADLEY UNIVERSITY, an Illinois not-for-profit corporation, | ) ) ) ) | |
| Defendant. | ) | |

## ORDER AND OPINION

This matter is now before the Court on Defendant Bradley University's ("Defendant" or "Bradley") Motion to Dismiss Plaintiff Jane Doe's ("Plaintiff") Amended Complaint under Fed. R. Civ. P. 12(b)(6). ECF No. 16. For the reasons stated below, Defendant's Motion is DENIED.

## JURISDICTION

This Court has jurisdiction over this action under 28 U.S.C. §1332(d), because at least one class member is of diverse citizenship from Defendant, and with more than 100 class members, the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, and costs. This Court also has supplemental jurisdiction over the alleged state law claims under 28 U.S.C. §1367.

## BACKGROUND

Plaintiff is a student at Bradley and was enrolled for the Spring 2020 semester.[1] Bradley is a private university in Peoria, Illinois. Plaintiff paid $17,100, or $1068 - $1426 per credit hour, for the Spring 2020 semester. According to Plaintiff, the tuition and fees she paid reflected fifteen weeks of in-person classes, as well as, use of facilities, resources, services, opportunities, events,

---

[1] The facts in the Background section are derived from Plaintiff's Amended Complaint. ECF No. 14.

1

and technologies — all meant to be on campus. Other fees Bradley charged included an $85 activity fee for student events, a $120 health fee for Bradley Health Services for students, and course surcharge fees, such as a $25 fee for use of a biology lab.

In early March 2020, Bradley ceased students' access to on-campus classes, services, and events. This was in order to protect the health and safety of students, staff, and faculty in light of the COVID-19 health pandemic. Bradley has not refunded any portion of the tuition or fees that Plaintiff paid for the Spring 2020 semester.

On July 14, 2020, Plaintiff filed a complaint. ECF No. 1. On August 26, 2020, Defendant filed a motion to dismiss Plaintiff's complaint. ECF No. 11. On September 30, 2020, Plaintiff filed an Amended Complaint. ECF No. 14. Since Plaintiff filed an Amended Complaint, Defendant's motion to dismiss Plaintiff's original complaint became moot. *See Trading Techs. Int'l, Inc. v. BGC Partners, Inc.*, No. 10 C 715, 2010 WL 3272842, at *1 (N.D. Ill. Aug. 17, 2010) ("Courts routinely deny motions to dismiss as moot after an amended complaint is filed.") On November 6, 2020, Defendant filed a Motion to Dismiss Plaintiff's Amended Complaint. ECF No. 16. On November 20, 2020, Plaintiff filed her response. ECF No. 18. This Opinion follows.

## STANDARD OF REVIEW

Dismissal under Federal Rule of Civil Procedure 12(b)(6) is proper if a complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must contain sufficient factual matter, which when accepted as true, states a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility means alleging factual content that allows a court to reasonably infer that the defendant is liable for the alleged misconduct. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007). A plaintiff's claim must "give enough details about the subject matter of the case to present a story that holds

together," to be plausible. *Swanson v. Citibank, N.A.,* 614 F.3d 400, 404 (7th Cir. 2010). A court must draw all inferences in favor of the non-moving party. *Bontkowski v. First Nat'l Bank of Cicero*, 998 F.2d 459, 461 (7th Cir. 1993).

When evaluating a motion to dismiss, courts must accept as true all factual allegations in the complaint. *Ashcroft*, 556 U.S. at 678. However, the court need not accept as true the complaint's legal conclusions; "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atlantic Corp.*, 550 U.S. at 555). Conclusory allegations are "not entitled to be assumed true." *Ashcroft*, 556 U.S. at 681.

## ANALYSIS

### I. Breach of Contract

Defendant argues that Plaintiff has failed to allege a contract with definite terms; rather, Plaintiff relies primarily on Bradley's course catalog and certain ancillary materials, which according to Bradley, is not enough to establish a contractual relationship. Plaintiff claims she has alleged all of the elements for breach of contract: (1) Plaintiff and Bradley were parties to a valid and enforceable contract for the Spring 2020 semester; (2) Bradley breached the contract by failing to provide fifteen weeks of on-campus, in-person instruction, as well as, access to on-campus services and activities; (3) Plaintiff performed by fully paying the tuition and fees; and (4) Plaintiff suffered actual losses and damages by paying:

> (a) prorated tuition and fees paid for one week of canceled classes, (b) prorated tuition and course instruction fees paid for in-person instruction versus online instruction for the last seven weeks of the Spring 2020 Semester; and (c) prorated fees paid for on-campus facilities, activities, supplies, resources, events, and technologies that were closed for the last 7 weeks of the Spring 2020 Semester.

ECF No. 14 at 26.

3

"In Illinois, a breach of contract claim consists of: 1) the existence of a valid and enforceable contract, 2) breach of the contract by the defendant, 3) performance by the plaintiff, and 4) resulting injury to the plaintiff." *Northbrook Bank & Tr. Co. v. Abbas*, 102 N.E.3d 861, 874 (Ill. App. Ct. 2018). The Seventh Circuit has held that a contractual relationship exists between a university with its students and "the terms of the contract are generally set forth in the school's catalogs and bulletins." *DiPerna v. Chicago Sch. of Prof. Psych.*, 893 F.3d 1001, 1006–07 (7th Cir. 2018) (internal citation and quotation omitted).

Recently, several lawsuits have ensued in sister courts with students requesting refunds as a result of COVID-19 restrictions put in place on in-person, on-campus classes. Courts have largely denied universities' motions to dismiss on nearly identical breach of contract claims because they found there were sufficient facts to allege a contract for in-person instruction based on university handbooks, catalogs, and brochures. *See Ford et al. v Rensselaer Polytechnic Inst.*, No. 1:20-CV-470, 2020 WL 7389155, at *7 (N.D.N.Y. Dec. 16, 2020) ("What matters at this moment is that plaintiffs have plausibly alleged that defendant specifically promised in its circulars a bevy of in-person academic programs that it did not provide."); *Rosado v. Barry U. Inc.,* No. 1:20-CV-21813-JEM, 2020 WL 6438684 (S.D. Fla. Oct. 30, 2020) (holding student sufficiently alleged existence of an implied contract and breach thereof arising from university's failure to reimburse student after transition from in-person to remote instruction due to COVID-19 pandemic.); *Chong et al. v Northeastern U.*, No. CV 20-10844-RGS, 2020 WL 7338499, at *3 (D. Mass. Dec. 14, 2020) ("Drawing all inferences in plaintiffs' favor, the court cannot, as a matter of law, say that no student who read these statements could have reasonably expected that . . . registering for on campus courses would entitle them to in-person instruction."); *see also Zahn v. Ohio U.,* No. 2020-00371JD, 2020 WL 6163919, at *3 (Ohio Ct. Cl. Oct. 19, 2020) (holding

student "could prove a set of facts that either an express or implied contract was created" with university "for an in-person education as opposed to an online education.").; *Milanov v. U. of Michigan,* No. 20-000056-MK, 2020 WL 7135331 (Mich. Ct. Cl. July 27, 2020) (stating that students can enter into contracts with universities); *Mellowitz v. Ball State U*., 2020 WL 5524659 (Ind. Super. Ct. Aug. 14, 2020) (denying university's motion to dismiss).

While no court in this district has yet to rule on the matter, this Court is persuaded by the cases from its sister courts. Accordingly, the Court concludes that Plaintiff's allegations are sufficient to establish, at minimum, an implied contract. *See Ross v. Creighton U*., 957 F.2d 410, 417 (7th Cir. 1992) ("the general nature and terms of the agreement are usually implied, with specific terms to be found in the university bulletin and other publications; custom and usages can also become specific terms by implication.") Here, Plaintiff states that she paid $17,100, or $1068 - $1425 per credit, for on-campus and in-person classes for the Spring 2020 semester. According to the catalog, many of these courses were intended to be on-campus and in-person; however, as of early March 2020, all courses moved to an online format. Bradley's course catalog and other materials tout its many resources and facilities — all of which were located on Bradley's campus and thereby imply in-person participation. Plaintiff also states that she performed her part of the contract by paying the tuition and fees, but she did not receive the in-person instruction and services she bargained for. The Court finds that Plaintiff has alleged sufficient facts at this early stage to adequately allege a claim for breach of contract.

Accordingly, the Court denies Defendant's Motion to Dismiss Count I of Plaintiff's Amended Complaint.

**II.     Unjust Enrichment**

5

Bradley argues that Plaintiff has not alleged facts to demonstrate that it received a benefit to Plaintiff's detriment. According to Bradley, Plaintiff asserted the university accepted and used federal aid funds, but Plaintiff made no claim that this funding covered the entirety of Bradley's cost to implement distance learning, or that Bradley did not have a legitimate need for those funds. Plaintiff claims that she specifically pled that "Bradley used the [Coronavirus Aid, Relief, and Economic Security Act ("CARES") - Higher Education Emergency Relief Fund ("HEERF")] funds to cover any costs associate [sic] with significant changes to the delivery of instruction due to COVID-19." ECF No. 14 at 6. Plaintiff also states that she further pled that Bradley's decision to take money from sources other than students, including the CARES Act – HEERF, resulted in unjust gain because it did not provide the entire fifteen weeks of in-person, on-campus classes that were paid for via tuition and fees.

To state a claim for unjust enrichment, "a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc*., 545 N.E.2d 672, 678 (Ill. 1989). Because unjust enrichment is based on an implied contract, the theory does not apply where an express oral or written contract governs the parties' relationship. *People ex rel. Hartigan v. E & E Hauling, Inc*., 607 N.E.2d 165, 177 (1992). A plaintiff is free to plead breach of contract and unjust enrichment in the alternative. *Horwitz v. Sonnenschein Nath & Rosenthal LLP*, 926 N.E.2d 934, 947 (Ill. App. Ct. 2010). This is because, in most instances, unjust enrichment is a cause of action based on an implied or quasi-contract. *People ex rel. Hartigan v. E & E Hauling, Inc*., 607 N.E.2d 165, 177 (Ill. 1992).

Plaintiff's Amended Complaint alleges the following:

> Despite failing to provide the benefits owed, Bradley has retained and appreciated the benefit of the amount of tuition and fees that Plaintiff and Class members

6

provided, to the detriment of Plaintiff and the Class. In addition to retaining tuition and fees paid by Plaintiff and Class Members for the Spring 2020 Semester, Bradley received money from other sources, including grant funding from the CARES Act- HEERF in the amount of $4,476,013. Section 18004(c) of the CARES Act allows recipients to use up to 50% of the funds received to cover any costs associated with significant changes to the delivery of instruction due to COVID-19 which Bradley did. In doing so, Bradley gained. It double dipped, collecting funds from both Plaintiff and Class Members and other sources, including the CARES-Act-HEERF, for the Spring 2020 Semester, to the detriment of Plaintiff and Class Members.

ECF No. 14 at 34. Bradley claims that its acceptance and use of federal aid funds, in addition to tuition and fees, does not amount to unjust enrichment; however, the Court finds that Plaintiff has properly pled unjust enrichment as an alternative to her claim for breach of contract. Especially since the existence of the underlying contract is in dispute, it would be premature for the Court to dismiss Plaintiff's unjust enrichment claim pled in the alternative to her breach of contract claim. As noted above, the Court finds that at minimum, Plaintiff has pled breach of an implied contract. *See infra* pp. 4-5.

Accordingly, the Court denies Defendant's Motion to Dismiss Count II of Plaintiff's Amended Complaint.

## CONCLUSION

For the reasons stated above, Defendant's [16] Motion to Dismiss Plaintiff's Amended Complaint is DENIED. Defendant's [11] Motion to Dismiss Plaintiff's complaint is MOOT.

ENTERED this 22nd day of December, 2020.

                                                 /s/ Michael M. Mihm
                                                  Michael M. Mihm
                                              United States District Judge