**EXHIBIT 7**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 20-10827-RGS

IN RE: BOSTON UNIVERSITY
COVID-19 REFUND LITIGATION

MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION TO DISMISS

January 7, 2020

STEARNS, D.J.

Plaintiffs Julia Dutra, Gabriella Dube, Shakura Cox, Valaauina Silulu, Natalia Silulu, Olivia Bornstein, and Venus Tran filed this putative class action against defendant Trustees of Boston University (BU).[1] By way of a Second Consolidated Amended Class Action Complaint (SCAC) (Dkt. # 49), they allege that BU breached an express or implied contract with its students (Counts I and II, respectively) or, alternatively, unjustly enriched itself at its students' expense (Count III) when it retained tuition and fees collected for the Spring semester of 2020 despite ceasing in-person instruction and closing its on-campus facilities and resources in March of 2020. BU moves

---

[1] Plaintiffs initially filed separate actions (1:20-cv-10827; 1:20-cv-10834; 1:20-cv-10914; 1:20-cv-11118; and 1:20-cv-11260). The court consolidated these actions into the present case in September of 2020.

to dismiss all claims pursuant to Fed. R. Civ. P. 12(b)(6). For the following reasons, the court will <u>ALLOW</u> the motion in part and <u>DENY</u> it in part.

## BACKGROUND

The essential facts, drawn from the SCAC and documents incorporated by reference and, as required by the Rule, viewed in the light most favorable to the plaintiffs, are as follows. BU is a university located in Boston, Massachusetts. It "is the fourth largest private, not-for-profit, residential research university in the United States, with over 35,000 students across over 300 programs of study." SCAC ¶ 34. Plaintiffs are undergraduate and graduate students who enrolled in classes at BU during the Spring semester of 2020.[2]

According to the SCAC, plaintiffs entered into a contractual agreement with BU to pay tuition and fees for the Spring semester of 2020 in exchange for, *inter alia*, access to campus facilities and activities, in-person instruction in a physical classroom, and room and board. *See id.* ¶¶ 165-166, 184; *see also id.* ¶ 33 ("[T]he tuition and fees for which BU charged Student Plaintiffs were predicated on access to and constant interaction with and feedback

---

[2] Plaintiff Valaauina Silulu is not a student at BU, but the SCAC includes him as a party because he "agreed to repay N[atalie] Silulu's loans, which she used to pay a portion of her tuition and fees." *Id.* ¶ 32.

from peers, mentors, professors, and guest lecturers; access to technology, libraries, and laboratories; opportunities to attend or participate in spectator sports and athletic programs; access to student government and health services; and participation in extracurricular groups and learning, among other things."). Plaintiffs purport to derive the terms of this contract from representations made by BU regarding tuition and fee payments and from representations made in BU's course registration materials for the Spring semester of 2020.[3]

Plaintiffs allege that they fulfilled their obligations under the contract when they paid the required "tuition, mandatory fees, and room and/or board costs" for the Spring semester of 2020.[4] *Id.* ¶ 166. They enrolled in in-person courses designated in registration materials to occur at specific times at specific locations on campus and received syllabi imposing strict

---

[3] Plaintiffs also highlight the existence of several writings they view as consistent with the terms of this alleged contract, e.g., course syllabi and university marketing materials.

[4] The undergraduate students (Dutra, Dube, Natalie Silulu, and Bornstein) paid $27,360.00 in tuition; a $60.00 Community Service Fee; a $307.00 Student Services Fee; and a $219.00 Health & Wellness Fee for the spring semester of 2020. They also paid an annual Sports Pass Fee of $130.00 at the beginning of the 2019-2020 academic year. The graduate students (Cox and Tran) paid tuition that "differs based on degree and course of study" (e.g., $17,568.00 for the School of Social Work), *see id.* ¶ 111, and fees that "vary based on program of study" (e.g., $378.00 for the medical sciences program), *see id.* ¶ 112.

3

attendance requirements. For the first half of the semester, they attended their classes in-person as specified in these documents. On March 11, 2020, however, BU informed students "that classes would transition to online-only classes for at least a month, from March 16, 2o20 through April 13, 2020." *Id.* ¶ 117. Less than a week later, BU notified students "that the remainder of the semester would be limited to online only [instruction] and that students . . . would be requested to vacate campus residential facilities" by March 22, 2020. *Id.* ¶ 118. BU closed many of its on-campus resources (e.g., the Fitness & Recreation Center) at the same time it closed the residential facilities and dramatically curtailed the services and activities offered at others (e.g., the Student Services and Health and Wellness centers). Plaintiffs did not have access to these shuttered services at any point during the remainder of the semester.

On April 3, 2020, BU agreed to refund a prorated portion of students' room and board fees dating from the March 22, 2020 closing of the residential facilities. It refused, however, to offer students a refund for tuition or any other semester fees. Plaintiffs seek through this putative class action to obtain a refund for a portion of these payments. They assert three claims on behalf of "[a]ll people who paid BU tuition, fees and/or room and board for in-person educational service, programs, access, and room and

4

board that BU failed to provide during the Spring Term, and whose tuition and/or fees have not been refunded": breach of an express contract (Count I); breach of an implied contract (Count II); and unjust enrichment (Count III). *Id.* ¶ 147.

## DISCUSSION

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Two basic principles guide the court's analysis. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. A claim is facially plausible if its factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

### a. Counts I and II, breach of contract

Counts I and II assert claims for breach of contract (express and implied, respectively) relative to the payment of tuition and fees for the

5

Spring semester of 2020.[5] "Under Massachusetts law, a breach of contract claim requires the plaintiff to show that (1) a valid contract between the parties existed, (2) the plaintiff was ready, willing, and able to perform, (3) the defendant was in breach of the contract, and (4) the plaintiff sustained damages as a result." *Bose Corp. v. Ejaz*, 732 F.3d 17, 21 (1st Cir. 2013), citing *Singarella v. City of Boston*, 342 Mass. 385, 387 (1961).

BU argues that plaintiffs have failed to state a claim because they have articulated no legal basis for any contractual right to in-person instruction. Plaintiffs respond that the contractual right to in-person instruction derives from their payment of tuition, which purportedly gave them the opportunity to register for courses, and from representations in BU's course registration materials, which implied that plaintiffs would receive traditional, face-to-face instruction at physical locations on campus for each of the courses for which they registered. Drawing all inferences in plaintiffs' favor, the court cannot, as a matter of law, say that no student could have reasonably

---

[5] The court is not convinced that plaintiffs' contract claim is a disguised educational malpractice claim, as BU implies. The SCAC appears to challenge the fact of the switch from in-person to online instruction, not the *quality* of the online education BU provided. *See Salerno v. Florida S. Coll.*, 2020 WL 5583522, at *5 (M.D. Fla. Sept. 16, 2020). And while it is possible that the measure of damages for this alleged breach will so inextricably implicate the issue of quality as to render the claim non-actionable, the court needs more information before it can make an informed judgment.

expected that paying the tuition charged for the Spring semester of 2020 and registering for on-campus courses would entitle them to in-person instruction. *See Bleiler v. Coll. of Holy Cross*, 2013 WL 4714340, at *15 (D. Mass. Aug. 26, 2013) ("When interpreting contracts between students and their academic institutions, under Massachusetts law courts employ the standard of reasonable expectation — what meaning the party making the manifestation, the university, should reasonably expect the other party to give it." (internal quotation marks omitted)), quoting *Schaer v. Brandeis Univ.*, 432 Mass. 474, 478 (2000). The court needs the benefit of further factual development of the contractual claims to resolve the issue on the merits.[6] The court accordingly denies the motion to dismiss the portions of Counts I and II premised on payment of tuition.

The portions of Counts I and II premised on the failure to provide access to on-campus facilities and resources present a closer question. Plaintiffs allege that their payment of certain fees entitled them to access the

---

[6] Other documents unavailable to the court at the motion to dismiss stage, for example, may undercut the reasonableness of any expectation of in-person instruction. In a similar vein, review of the specific representations BU made during the billing and course registration processes (the court has not yet seen the documents relevant to these processes) may reveal that no student could have reasonably expected payment of tuition and fees and registration for classroom courses to entitle him or her to in-person instruction and access to on-campus facilities and resources.

7

referenced facilities and services. To assess the parties' reasonable expectations, the court turns to the descriptions provided by BU for each fee. BU describes the fees in general terms of "support[ing]" programs or "offset[ting] costs." SCAC ¶¶ 100, 102, 104. *But see id.* ¶¶ 6, 108 (noting that students pay the Sports Pass fee in exchange for "admission to all home events for ice hockey, basketball, lacrosse and soccer"). While such broad language would ordinarily weigh against a finding of a contractual right to access any particular on-campus facilities or resources, the court finds it significant that the descriptions in this case also refer to specific activities occurring at specific locations (e.g., "services at the George Sherman Union, East Campus Student Service Center, Residence Halls and other such student support spaces," or operations at the "student Health Services clinic at 881 Commonwealth Avenue as well as the Fitness & Recreation Center and their satellite operations"), and that BU "dramatically curtailed" or no longer provided these activities after March 22, 2020. *Id.* ¶¶ 100-108. Under the circumstances, the court cannot say, as a matter of law, that plaintiffs could not have reasonably expected that their payment of mandatory fees would grant them access to at least some of the on-campus facilities and resources shut down by BU on March 22, 2020. Further factual development is needed to resolve the issue on the merits. The court will therefore deny the motion

to dismiss the portions of Counts I and II premised on the failure to provide access to on-campus facilities and resources.

Turning to the remaining aspect of plaintiffs' contract claims – the portions seeking a refund on room and board costs for the week between March 15, 2020 and March 22, 2020 – the court determines that plaintiffs have not shown any plausible entitlement to relief. BU does not appear to dispute that it had a contractual obligation to provide housing for students during this week. Instead, it asserts that plaintiffs have not shown any breach of the referenced obligation. The court agrees. BU may have *encouraged* its students vacate housing "sooner [than March 22, 2020] if possible," but it did not *require* any student to vacate on-campus housing prior to this date. *See* SCAC ¶ 141. And the court declines to find that encouragement alone, without any indication BU acted to prevent plaintiffs from returning to their housing during the relevant period, is sufficient to establish constructive eviction. The court accordingly grants the motion to dismiss the portions of Counts I and II premised on the failure to provide room and board during the week between March 15, 2020 and March 22, 2020.

### b. Count III, unjust enrichment

Count III asserts a claim of unjust enrichment. To establish unjust enrichment, a plaintiff must show (1) "she conferred a benefit upon the defendant," (2) "the defendant accepted the benefit," and (3) "the defendant's retention of the benefit would be inequitable without payment for its value." *Reed v. Zipcar, Inc.*, 883 F. Supp. 2d 329, 334 (D. Mass. 2012).

BU argues that plaintiffs cannot, as a matter of law, state a claim for unjust enrichment because they have an adequate alternative remedy available, namely, a breach of contract action. *See Shaulis v. Nordstrom, Inc.*, 865 F.3d 1, 16 (1st Cir. 2017) (noting that "a party with an adequate remedy at law cannot claim unjust enrichment"). BU, however, disputes the existence of any contract between the parties requiring in-person instruction or access to on-campus facilities and resources, and plaintiffs plead unjust enrichment only to the extent the parties do not have a valid contract on these grounds. It would thus be inappropriate for the court to find plaintiffs limited to a contractual remedy at this juncture. *See Lass v. Bank of Am., N.A.*, 695 F.3d 129, 140-141 (1st Cir. 2012).

BU alternatively suggests that plaintiffs have failed to establish the existence of unjust circumstances warranting application of an equitable remedy. The court agrees as to the portions of plaintiffs' claim premised on

10

the failure to provide room and board during the week of March 15, 2020 through March 22, 2020. As noted above, plaintiffs have not sufficiently pled that they were constructively evicted from their housing during this period, and they do not assert any other basis to find the existence of unjust circumstances. The court accordingly dismisses these portions of Count III.

The court declines to dismiss the remaining portions of Count III, however. Unjustness is "a quality that turns on the reasonable expectations of the parties." *See Metro. Life Ins. Co. v. Cotter*, 464 Mass. 623, 644 (2013), quoting *Glob. Invs. Agent Corp. v. Nat'l Fire Ins. Co.*, 76 Mass. App. Ct. 812, 826 (2010). Here, plaintiffs allege that they reasonably expected to receive in-person instruction and access to on-campus facilities and resources in return for payment of tuition and fees and that BU failed to provide these services. Because the court cannot say, as a matter of law, that no reasonable juror taking these allegations as true could determine that BU's failure to refund tuition and fees was unjust under the circumstances, the court declines to dismiss the portions of Count III premised on the failure to provide in-person instruction or access to on-campus facilities and resources.

11

## ORDER

For the foregoing reasons, the motion to dismiss is <u>ALLOWED</u> in part and <u>DENIED</u> in part. Specifically, the court dismisses the portions of Counts I, II, and III premised on the failure to provide room and board for the week between March 15, 2020 and March 22, 2020. The portions of Count I, II, and III premised on the failure to provide in-person instruction and the closure of on-campus facilities and resources, however, survive defendant's motion.

                 SO ORDERED.

                 /s/ Richard G. Stearns_____
                 UNITED STATES DISTRICT JUDGE